UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANTHONY F., | NO. 1:19-CV-3099-TOR |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 11, 12). The Court has reviewed the administrative record and the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's motion.

**JURISDICTION**

The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that [he or she] is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On January 6, 2016, Plaintiff filed applications for Title II disability insurance benefits and Title XVI supplemental security income benefits, alleging an amended onset date of August 1, 2014. Tr. 45, 261-67.[1] The applications were denied initially, Tr. 174-82, and on reconsideration, Tr. 186-98. Plaintiff appeared at a hearing before an administrative law judge ("ALJ") on January 30, 2018. Tr. 41-77. On May 9, 2018, the ALJ denied Plaintiff's claim. Tr. 17-39.

As a preliminary matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. Tr. 23. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 1, 2014, the amended alleged onset date. *Id.* At step two, the ALJ

---

[1] Plaintiff filed a prior application for benefits, which alleged an amended onset date of April 18, 2012 and was denied on October 24, 2013. Tr. 81-96.

found Plaintiff had the following severe impairments: chronic obstructive pulmonary disorder (COPD), cervical and lumbar degenerative disc disease with stenosis, bipolar disorder, and posttraumatic stress disorder (PTSD). *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 24. The ALJ then found Plaintiff had the RFC to perform work with the following limitations:

> [Plaintiff] has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, sit about 6 hours, and stand and/or walk about 6 hours in an 8-hour day with regular breaks. He has the unlimited ability to push and/or pull within those exertional limits. He can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to extreme cold, vibration, hazards, and fumes, odors, dusts, gases and poor ventilation. He can understand, remember and carry out simple and routine tasks and have occasional brief superficial contact with coworkers and the general public.

Tr. 26.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 32. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as production assembler, inspector hand packager, and machine feeder. Tr. 33, 35. The ALJ concluded that Plaintiff was not under a

disability, as defined in the Social Security Act, from August 1, 2014 through May 9, 2018, the date of the ALJ's decision.  Tr. 35.

On March 8, 2019, the Appeals Council denied review, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for the purposes of judicial review.  *See* 20 C.F.R. §§ 404.981, 416.1484, and 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly weighed Plaintiff's symptom testimony; and

2.  Whether the ALJ properly weighed the medical opinion evidence. ECF No. 11 at 2.

## DISCUSSION

### A.  Plaintiff's Symptom Testimony

Plaintiff contends the ALJ failed to rely on clear and convincing reasons to discredit his symptom testimony.  ECF No. 11 at 4-15.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is 'objective

medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "The claimant is not required to show that [the claimant's] impairment 'could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7-*8; 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found Plaintiff's impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence. Tr. 25.

### 1. Inconsistent Medical Evidence

The ALJ found Plaintiff's symptom reporting was inconsistent with the medical evidence in the record. Tr. 27-30. An ALJ may not discredit a claimant's

symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

      *a. Breathing Impairments*

First, the ALJ found that Plaintiff's allegations about shortness of breath and needing an oxygen tank at all times were inconsistent with the objective evidence, which showed normal examination findings and permission to discontinue using the oxygen tank. Tr. 28; *see* Tr. 524 (May 30, 2014: normal lung examination; Plaintiff advised he could stop using oxygen); Tr. 521 (July 1, 2014: Plaintiff's oxygen saturations "have all been greater than 90% in the past so it is unclear why he was on Home O2 to begin with"); Tr. 410, 412 (January 8, 2015: diminished breath sounds, no wheezing, oxygen at 97%, good lung function observed); Tr. 479 (January 20, 2015: breathing unlabored, no wheezing or crackles, oxygen at 96% on room air); Tr. 509 (March 26, 2015: decreased breath sounds, no wheezing or

crackles); Tr. 507 (April 30, 2015: no wheezing or crackles); Tr. 504-05 (August

17, 2015: breathing unlabored, no wheezing or crackles, oxygen at 95% on room

air); Tr. 501-02 (November 6, 2015: same); Tr. 499 (February 18, 2016: breathing

unlabored, no wheezing or crackles); Tr. 497 (February 19, 2016: breathing

unlabored, no wheezing or crackles, oxygen at 94% on room air); Tr. 900 (January

27, 2017: oxygen at 96% on room air); Tr. 881 (July 7, 2017: breathing unlabored,

mild wheezing, oxygen at 95% on room air); Tr. 874 (August 4, 2017: breathing

unlabored with mild wheezing).  The ALJ reasonably concluded that this evidence

did not support the significant limitations Plaintiff alleged.  This finding is

supported by substantial evidence.

### b. Back Pain

Second, the ALJ found that Plaintiff's testimony about severe back, neck,

and limb pain were not supported by the objective imaging and physical

examination evidence, which the ALJ found showed more moderate findings.  Tr.

27; *see* Tr. 429 (June 19, 2014: intact motor in lower extremities, normal deep

tendon reflexes, able to walk on toes but not on heels); Tr. 425 (September 4,

2014: normal reflexes in knees and ankles and bilateral lower extremities motor

intact); Tr. 384-85 (November 5, 2014: CT imaging showed disc herniations that

"could be" significant for nerve root impingement but did not correlate to

Plaintiff's complaints, mild central canal stenoses, and severe right foraminal

stenosis potentially significant for right-sided radiculopathy);  Tr. 383 (November 11, 2014: physical examination showed poor range of motion in lower back but normal gait, ability to heel/toe walk, full strength in lower extremities, normal reflexes, and negative straight leg raise); Tr. 417-18 (November 13, 2014: negative straight leg raise bilaterally); Tr. 414-15 (December 11, 2014: positive Faber test on the right but negative straight leg raise bilaterally and able to do full squat from standing position); Tr. 941 (April 4, 2017: Plaintiff ambulated without assistance); Tr. 933 (May 30, 2017: Plaintiff ambulated without assistance, hip range of motion intact, lower extremities motor intact); Tr. 929 (July 25, 2017: Plaintiff ambulated without assistance, cervical range of motion severely restricted); Tr. 921 (September 28, 2017: Plaintiff ambulated without assistance, motor intact and full strength in lower extremities); Tr. 958-59 (December 11, 2017: MRI imaging showed multilevel degenerative changes demonstrating moderate stenosis, moderate narrowing of neural foramen, small disc protrusion, and mild increase of degenerative spondylosis of the cervical spine since 2015 imaging).  The ALJ's conclusion that the evidence did not support Plaintiff's subjective symptom complaints is supported by substantial evidence.

In response to the ALJ's findings, Plaintiff argues that his imaging and examination results do support his symptom allegations.  ECF No. 11 at 9-12; *see* Tr. 385 (November 5, 2014: MRI showed left-sided disc herniations that could be

significant for nerve root impingement); Tr. 382 (October 3, 2014: positive straight leg raise); Tr. 908 (October 11, 2016: Plaintiff observed constantly rocking back and forth in his chair); Tr. 801 (July 28, 2017: Plaintiff exhibited slight wincing because of possible acute back pain when standing from a seated position); Tr. 794 (September 8, 2017: same); Tr. 786 (October 17, 2017: Plaintiff exhibited rocking and restlessness "possibly due to pain"); Tr. 776 (November 28, 2017: Plaintiff exhibited slight rocking and restlessness "possibly due to pain and anxiety").

It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews*, 53 F.3d at 1039. The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted). Here, because the ALJ's conclusion is based on a rational interpretation of the evidence, the ALJ's finding is upheld.

### c. *Mental Impairments*

Finally, the ALJ found that Plaintiff's allegations of significant memory loss were inconsistent with the longitudinal evidence, which did not document memory impairments until later 2017 and did not document severe impairments. Tr. 29-30; *see, e.g.*, Tr. 626 (August 28, 2014: mental status examination showed no obvious impairment of memory of intellectual functioning); Tr. 586 (May 8, 2015: same);

Tr. 573 (September 25, 2015: same); Tr. 563 (February 3, 2016: same); Tr. 558 (April 12, 2016: same); Tr. 553 (May 18, 2016: same); Tr. 721 (July 27, 2016: same); Tr. 758 (July 12, 2017: cognitive testing showed mild impairment in attention, executive functions, and visuospatial skills, and moderate impairment in memory).

Plaintiff argues that observations in the record by his medical providers support Plaintiff's allegations of severe memory loss. ECF No. 11 at 5-6; *see* Tr. 375 (Dr. Chang found inconsistencies in Plaintiff's history and insistence that he did not have a prior appointment "worrisome"); Tr. 534 (Dr. Siddiqui did not find Plaintiff to be a reliable historian). Plaintiff also argues that the ALJ erred in failing to discuss Plaintiff's MOCA test results. ECF No. 11 at 6-7; *see* Tr. 893 (April 11, 2017: Plaintiff's MOCA score indicated significant cognitive impairment); Tr. 871 (October 13, 2017: MOCA score unchanged from prior test).

"[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted). Even where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch*, 400 F.3d at 679. The Court will only disturb the ALJ's findings if they are not supported by substantial evidence. *Hill*, 698 F.3d at 1158. Although Plaintiff identifies some evidence that supports Plaintiff's symptom allegations, the ALJ's

conclusion remains supported by substantial evidence. Moreover, even if the ALJ erred in concluding that Plaintiff's allegations of memory impairments were not supported by the medical evidence, such error would be harmless because the ALJ's other findings about Plaintiff's symptom allegations compared to the medical evidence were supported by substantial evidence. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible). Plaintiff is not entitled to relief on these grounds.

2. *Improvement with Treatment*

The ALJ found Plaintiff's symptom reports were inconsistent with evidence documenting improvement with treatment. Tr. 27-30. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3), 416.929(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d

1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

Here, the ALJ noted that Plaintiff reported improvements in his pain symptoms with medication. Tr. 27; *see* Tr. 404 (March 4, 2015: Plaintiff reported Percocet, gabapentin, and Flexeril helped keep his pain manageable); Tr. 401 (April 29, 2015: Plaintiff reported pain medication helped reduce his overall level of pain and increase his functioning during daily activities). The ALJ also observed that Plaintiff learned strategies in speech therapy that "significantly improved" his immediate memory. Tr. 29; *see* Tr. 761. Additionally, the ALJ found that Plaintiff repeatedly reported improvement in anxiety, depression, and nightmares when compliant with medication and treatment. Tr. 29-30; *see* Tr. 625 (August 28, 2014: Plaintiff reported decreased nightmares with Prazosin); Tr. 608 (January 22, 2015: Plaintiff's anxiety starting to resolve as Plaintiff decreases his isolation); Tr. 585 (May 8, 2015: Plaintiff reported trauma therapy, coping skills, and improved sleep hygiene improved his mental health symptoms and decreased nightmares with Prazosin); Tr. 567 (December 1, 2015: Plaintiff reported improvements in mental health symptoms after starting Latuda); Tr. 562 (February 3, 2016: Plaintiff's wife reported a "big change" in Plaintiff's symptoms since starting Latuda); Tr. 552 (May 18, 2016: Plaintiff reported doing "quite a bit better" after increasing his dose of Latuda). Relatedly, the ALJ noted that

Plaintiff's symptoms worsened at times when he was not compliant with medication. Tr. 29; *see* Tr. 597 (February 24, 2015: Plaintiff reported worse sleep and nightmares and was not taking his increased dose of Prazosin); Tr. 510 (March 11, 2015: Plaintiff reported increased suicidal ideation, hearing voices, and unwanted thoughts and feelings at a time when he was unable to take medications or see his therapist). Plaintiff contends that the ALJ improperly relied on isolated instances of improvement among cycles of improvement and decompensation, but he fails to identify evidence in the record to support this argument. ECF No. 11 at 13-14. The ALJ reasonably concluded that Plaintiff's record of improvement with treatment was inconsistent with his symptom allegations. This finding is supported by substantial evidence.

### 3. *Treatment Gap*

The ALJ found Plaintiff's symptom reports were inconsistent with the significant gap Plaintiff experienced in his treatment. Tr. 27-28. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). And evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom

reports.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001); *see also Bell-Shier v. Astrue*, 312 F. App'x 45, 49 (9th Cir. 2009) (unpublished opinion).

Here, the ALJ noted that Plaintiff stopped pursuing pain management treatment between October 2015 and December 2017 after Plaintiff was discontinued from opioid therapy due to marijuana use and other risk factors.  Tr. 27; *see* Tr. 392 (October 7, 2015: repeat urine tests indicated active regular marijuana use); Tr. 863 (December 12, 2017: noting Plaintiff was discontinued on chronic opioid therapy in 2015 due to marijuana use and overall high risk factors; Plaintiff left the pain clinic in 2015 to pursue treating his pain with marijuana). During this pain clinic treatment gap, Plaintiff sought treatment elsewhere for other diagnoses but largely went without pain treatment.  Tr. 27; *see* Tr. 492-93, 870. The ALJ reasonably concluded that this failure to pursue pain treatment for an extended period was inconsistent with Plaintiff's allegations of severely limiting back pain.  This finding is supported by substantial evidence.

### 4.  *Inconsistent Statements*

The ALJ found Plaintiff's symptom reports were less credible because Plaintiff inconsistently reported his oxygen use.  Tr. 28.  In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct under other circumstances.  *Smolen v. Chater*, 80

F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").  Here, the ALJ noted that despite Plaintiff's hearing testimony that he used oxygen at all times, Plaintiff reported at other times that he was not using oxygen all of the time.  Tr. 28; *compare* Tr. 60-61 (Plaintiff testified that he used oxygen at all times for the last four years) *with* Tr. 523-24 (May 30, 2014: Plaintiff reported using oxygen as needed; Plaintiff advised he can discontinue oxygen use and use as needed); Tr. 902 (January 24, 2017: Plaintiff reported using oxygen all night and sometimes during the day); Tr. 897 (March 14, 2017: Plaintiff reported using home oxygen 85% of the time).  The ALJ reasonably concluded that Plaintiff's inconsistently reported oxygen use undermined the credibility of Plaintiff's subjective symptom reporting.  This finding is supported by substantial evidence.

### 5.  *Daily Activities*

The ALJ found Plaintiff's daily activities were inconsistent with specific limitations Plaintiff alleged.  Tr. 30.  The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*,

674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Here, the ALJ noted that although Plaintiff reported doing minimal household activities, Plaintiff reported at other times that his wife was "totally disabled" so all household activities fell to him. Tr. 30; *compare* Tr. 326-29 *with* Tr. 411, 449. Although Plaintiff alleged that he struggled to be around others, Plaintiff also reported volunteering at his children's school. Tr. 30; *compare* Tr. 53-54, 290 *with* Tr. 629. While Plaintiff testified at the hearing that his impairments and medications caused him to stop driving three years ago, the record indicated Plaintiff was driving as recently as one month prior to the hearing. Tr. 30; *compare* Tr. 65 *with* Tr. 862. The ALJ reasonably concluded that Plaintiff's activities were inconsistent with the specific limitations he alleged. *Molina*, 674 F.3d at 1113. This finding is supported by substantial evidence.

### 6. Situational Stressors

The ALJ found Plaintiff's symptom reports were less credible because Plaintiff's mental impairments were partially attributable to situational stressors. Tr. 29-30. An ALJ may reasonably find a claimant's symptom testimony less

credible where the evidence "squarely support[s]" a finding that the claimant's impairments are attributable to situational stressors rather than impairments. *Wright v. Colvin*, No. 13-CV-3068-TOR, 2014 WL 3729142, at *5 (E.D. Wash. July 25, 2014) ("Plaintiff testified that she would likely be able to maintain full-time employment but for the 'overwhelming' stress caused by caring for her family members."). However, "because mental health conditions may presumably *cause* strained personal relations or other life stressors, the Court is not inclined to opine that one has caused the other based only on the fact that they occur simultaneously." *Brendan J. G. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-CV-742-SI, 2018 WL 3090200, at *7 (D. Or. June 20, 2018) (emphasis in original). Here, the ALJ noted that reports in the record indicated that the severity of Plaintiff's mental health symptoms was increased by situational factors, including environment and family relationships. Tr. 29. The ALJ did not identify any evidence to indicate that Plaintiff's symptoms were attributable to these situational stressors rather than his impairments. *Id.* Because the Court cannot determine causation between Plaintiff's mental impairments and situational stressors based on this record, this finding is not supported by substantial evidence. However, the ALJ's error is harmless because the ALJ provided several other clear and convincing reasons, supported by substantial evidence, to discredit Plaintiff's subjective symptom testimony. *Molina*, 674 F.3d at 1115 ("[S]everal of our cases

have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."). Plaintiff is not entitled to relief on these grounds.

**B. Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinions of Bruce Eather, Ph.D.; Eugene Kester, M.D.; Faisal Siddiqui, M.D.; and Shilpa Muddasani, M.D. Tr. 15-20.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, the opinion of a treating physician carries more weight than the opinion of an examining physician, and the opinion of an examining physician carries more weight than the opinion of a reviewing physician. *Id.* In addition, the Commissioner's regulations give more weight to opinions that are explained than to opinions that are not, and to the opinions of specialists on matters relating to their area of expertise over the opinions of non-specialists. *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester*, 81 F.3d at 830-831). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 1. *Dr. Eather and Dr. Kester*

Dr. Eather reviewed the record on June 30, 2016, and opined Plaintiff was moderately limited in his ability to understand and remember detailed instructions; that Plaintiff would not have issues with simple, routine tasks but more fast paced work would need to be given more time to adjust to; that Plaintiff was moderately limited in his ability to carry out detailed instructions; that Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods;

that Plaintiff was moderately limited in his ability to perform activities within a

schedule, maintain regular attendance, and be punctual within customary

tolerances; that Plaintiff was moderately limited in his ability to work in

coordination with or in proximity to others without being distracted by them; that

Plaintiff was moderately limited in his ability to complete a normal workday and

workweek without interruptions from psychologically based symptoms and to

perform at a consistent pace without an unreasonable number and length of rest

periods; that Plaintiff's concentration, persistence, and pace would be diminished

due to elevated anxiety and PTSD symptoms; that Plaintiff was moderately limited

in his ability to interact appropriately with the general public; that Plaintiff was

moderately limited in his ability to accept instructions and respond appropriately to

criticism from supervisors; that Plaintiff was moderately limited in his ability to

get along with coworkers or peers without distracting them or exhibiting

behavioral extremes; and that Plaintiff would need to have superficial contact with

the general public and with co-workers but would do well with supervisors who are

not critical.  Tr. 113-15.

Dr. Kester reviewed the record on October 4, 2016, opined the same

functional limitations as Dr. Eather opined, and further opined that Plaintiff was

capable of carrying out simple, routine tasks in a work environment that only

requires occasional coworker contact, and that Plaintiff would experience

intermittent interruption of concentration, persistence, and pace due to

psychological symptoms, but that Plaintiff could complete a normal workweek

with customary breaks.  Tr. 147-49.

The ALJ gave great weight to both opinions, although the ALJ gave greater

weight to Dr. Kester's opinion over Dr. Eather's opinion.  Tr. 32.  Plaintiff

challenges the ALJ's evaluation of these opinions, arguing that they should have

been given less weight because both opinions were rendered before other evidence

of Plaintiff's mental impairments became part of the record.  ECF No. 11 at 15-16.

Plaintiff essentially invites this Court to reweigh the evidence.  The Court "may

neither reweigh the evidence nor substitute its judgment for that of the

Commissioner."  *Blacktongue v. Berryhill*, 229 F. Supp. 3d 1216, 1218 (W.D.

Wash. 2017) (citing *Thomas*, 278 F.3d at 954); *see also Tommasetti*, 533 F.3d at

1038 ("[W]hen the evidence is susceptible to more than one rational interpretation"

the court will not reverse the ALJ's decision).  The Court may not reverse the

ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of

the record.

Plaintiff also argues that the ALJ had a duty to further develop the record on

Plaintiff's cognitive functioning and that the ALJ did not have the expertise to

translate the medical evidence into functional terms.  ECF No. 11 at 16 (citing

*Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Schmidt v. Sullivan*, 914 F.2d

117, 118 (7th Cir. 1990)).  Plaintiff's argument is contrary to this circuit's case

law, which instructs that "the ALJ is responsible for translating and incorporating

clinical findings into a succinct RFC."  *Rounds v. Comm'r Soc. Sec. Admin.*, 807

F.3d 996, 1006 (9th Cir. 2015).  Additionally, the ALJ's duty to develop the record

is triggered by ambiguous evidence or the ALJ's own finding that the record is

"inadequate to allow for proper evaluation of the evidence."  *Tonapetyan v. Halter*,

242 F.3d 1144, 1150 (9th Cir. 2001).  The ALJ did not make a finding that the

record was inadequate, and Plaintiff fails to identify how the challenged evidence

presents an ambiguity.  ECF No. 11 at 16.  The ALJ's evaluation of the reviewing

sources' opinions is supported by substantial evidence.

   *2.  Dr. Siddiqui*

   Dr. Siddiqui, a treating provider, opined on January 8, 2015[2] that Plaintiff's

diagnoses included lumbar disc herniation with mild central canal stenosis, COPD,

schizoaffective disorder, and PTSD; that Plaintiff was limited in his ability to lift

heavy objects, stand or sit for long periods of time, bend over, reach above,

concentrate for extended periods of time, and interact with people; that Plaintiff

was unable to participate in work; that Plaintiff was unable to lift at least 2 pounds

or unable to stand or walk; and that Plaintiff's condition limited his ability to work,

---

[2]      Dr. Siddiqui incorrectly dated the from as January 8, 2014.  Tr. 390.

look for work, or train to work.  Tr. 388-90.   The ALJ gave this opinion little weight.  Tr. 31.  Because Dr. Siddiqui's opinion was contradicted by Dr. Martin, Tr. 111-13, and Dr. Irwin, Tr. 145-47, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Siddiqui's opinion.  *Bayliss*, 427 F.3d at 1216.

First, the ALJ found that Dr. Siddiqui's opinion was entitled to less weight because it was inconsistent with his contemporaneous examination.  Tr. 31.  A physician's opinion may be rejected if it is unsupported by the physician's treatment notes.  *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). Here, the ALJ found that Dr. Siddiqui's severe limitations were inconsistent with his physical examination of Plaintiff, showing breathing without wheezing or crackles, no acute distress, and oxygen saturation at 96% on room air.  Tr. 31; *see* Tr. 479.  During this examination Plaintiff also disclosed that he only used his albuterol inhaler after smoking and that he only used his oxygen tank as needed. Tr. 478.  The ALJ reasonably concluded that this physical examination evidence was inconsistent with the significant limitations Dr. Siddiqui opined, such as being unable to lift 2 pounds or stand or walk.  Tr. 31.  This finding is supported by substantial evidence.

Second, the ALJ also found that Dr. Siddiqui's opinion was entitled to less weight because it was inconsistent with Plaintiff's other physical examinations.

Tr. 31.  Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole.  *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.  Here, the ALJ found that Dr. Siddiqui's significant opined limitations were inconsistent with other physical examinations that showed less severe respiratory symptoms and measures of back pain limitations in the record.  Tr. 31; *see* Tr. 479 (January 20, 2015: breathing unlabored, no wheezing or crackles, oxygen at 96% on room air); Tr. 509 (March 26, 2015: decreased breath sounds, no wheezing or crackles); Tr. 507 (April 30, 2015: no wheezing or crackles); Tr. 504-05 (August 17, 2015: breathing unlabored, no wheezing or crackles, oxygen at 95% on room air); Tr. 501-02 (November 6, 2015: same); Tr. 499 (February 18, 2016: breathing unlabored, no wheezing or crackles); Tr. 497 (February 19, 2016: breathing unlabored, no wheezing or crackles, oxygen at 94% on room air); Tr. 900 (January 27, 2017: oxygen at 96% on room air); Tr. 881 (July 7, 2017: breathing unlabored, mild wheezing, oxygen at 95% on room air); Tr. 874 (August 4, 2017: breathing unlabored with mild wheezing); *see also* Tr. 383 (November 11, 2014: physical examination showed poor range of motion in lower back but normal gait, ability to heel/toe walk, full strength in lower extremities, normal reflexes, and negative straight leg raise); Tr. 417-18 (November 13, 2014: negative straight leg raise

bilaterally); Tr. 414-15 (December 11, 2014: positive Faber test on the right but negative straight leg raise bilaterally and able to do full squat from standing position); Tr. 941 (April 4, 2017: Plaintiff ambulated without assistance); Tr. 933 (May 30, 2017: Plaintiff ambulated without assistance, hip range of motion intact, lower extremities motor intact); Tr. 929 (July 25, 2017: Plaintiff ambulated without assistance, cervical range of motion severely restricted); Tr. 921 (September 28, 2017: Plaintiff ambulated without assistance, motor intact and full strength in lower extremities). The ALJ reasonably concluded that this physical examination evidence was inconsistent with the significant limitations Dr. Siddiqui opined. This finding is supported by substantial evidence.

Third, the ALJ found that Dr. Siddiqui's opinion on Plaintiff's mental and other physical impairments was entitled to less weight because Dr. Siddiqui was only treating Plaintiff for COPD. Tr. 31. A medical provider's specialization is a relevant consideration in weighing medical opinion evidence. 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). In response to a subsequent request to complete more paperwork, Dr. Siddiqui explicitly noted that he was "only managing [Plaintiff's] COPD and cannot speak for [Plaintiff's] other diagnoses." Tr. 509. The ALJ reasonably concluded that Dr. Siddiqui was less qualified to render opinions on Plaintiff's functioning aside from those caused by COPD. This finding is supported by substantial evidence.

### 3. Dr. Muddasani

Dr. Muddasani, a treating source, rendered three opinions in this record. On October 11, 2016, Dr. Muddasani opined Plaintiff's diagnoses included bipolar depression, schizophrenia, PTSD, and chronic back pain; that Plaintiff would need to lie down for 20-30 minutes at a time, 4-5 times per day; that Plaintiff could not stand or sit for extended periods and needed to continuously move; that Plaintiff's diagnoses were reasonably likely to cause pain; that Plaintiff would not be able to tolerate work that requires extended periods of sitting or standing; that Plaintiff would miss an average of 4 or more days of work per month; that Plaintiff was unable to meet the demands of full time sedentary work; and that Plaintiff was limited more from his psychiatric impairments than his physical impairments. Tr. 725-27.

On November 10, 2016, Dr. Muddasani opined Plaintiff's diagnoses included COPD, PTSD, schizoaffective disorder, lumbar disc herniation at multiple levels, and mild central canal stenosis; that Plaintiff's medications caused sedation and drowsiness that limited his activities; that Plaintiff's impairments were reasonably likely to cause pain; that regular work could worsen Plaintiff's disc herniation; that Plaintiff was likely to miss 4 or more days of work per month due to pain; and that Plaintiff was unable to meet the demands of full time sedentary work. Tr. 728-30.

On August 16, 2017, Dr. Muddasani opined Plaintiff's diagnoses included lumbar disc herniation, mild central canal stenosis, schizoaffective disorder, anxiety and depression, severe COPD, memory impairment, and PTSD; that Plaintiff's impairments limited his ability to lift heavy objects, stand or sit for long periods of time, follow instructions, bend over, concentrate for extended periods of time, retain memory, make and keep appointments, use transportation, stand in line, and participate in interviews; that Plaintiff was unable to participate in work; that Plaintiff was unable to lift at least two pounds or unable to stand or walk; and that Plaintiff's condition was permanent and likely to limit his ability to work, look for work, or train for work. Tr. 749-51.

The ALJ gave Dr. Muddasani's opinions little weight. Tr. 31. Because Dr. Muddasani's opinions were contradicted by Dr. Martin, Tr. 111-13, and Dr. Irwin, Tr. 145-47, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Muddasani's opinions. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Muddasani's opinions were internally inconsistent. Tr. 31. An ALJ may reject opinions that are internally inconsistent. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999). Additionally, the ALJ may properly reject a medical opinion that gives no explanation for deviating from the provider's prior medical opinion. *See Morgan v. Sullivan*, 945 F.2d 1079, 1081 (9th Cir. 1991). Here, the ALJ noted that despite opining that Plaintiff's

physical impairments caused significant limitations, Dr. Muddasani concluded her

October 2016 report by remarking that Plaintiff was more limited by his mental

impairments than his physical impairments.  Tr. 31; *see* Tr. 727.  Additionally, the

ALJ noted that despite opining in October 2016 that Plaintiff would need to lie

down for extended periods multiple times per day, Dr. Muddasani did not reiterate

this opinion in her November 2016 report when responding to the same question.

Tr. 31; *compare* Tr. 725 *with* Tr. 728.  Dr. Muddasani's reports do not explain why

she did not give the same opinion in November 2016.  The ALJ reasonably

concluded that Dr. Muddasani's opinions were internally inconsistent.  This

finding is supported by substantial evidence.

Second, the ALJ found Dr. Muddasani's opinions were not supported by her

own treatment notes.  Tr. 31.  A physician's opinion may be rejected if it is

unsupported by the physician's treatment notes.  *See Connett*, 340 F.3d at 875.

Here, the ALJ noted that Dr. Muddasani's contemporaneous treatment notes do not

document physical findings that indicate Plaintiff would need to lie down during

the day.  Tr. 31; *see* Tr. 874-75 (August 4, 2017: no musculoskeletal examination

findings); Tr. 908-09 (October 11, 2016: Plaintiff observed rocking in chair, which

he states distracts from his pain; Dr. Muddasani notes his disability appears to be

more psychiatric than physical).  The ALJ reasonably concluded that Dr.

Muddasani's opinions were not supported by her treatment notes. This finding is supported by substantial evidence.

Third, the ALJ found Dr. Muddasani's opinions reflected Plaintiff's functioning without treatment. Tr. 31. The fact that a claimant fails to pursue treatment is not directly relevant to the weight of a medical provider's opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). However, the consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. As discussed *supra*, the ALJ observed Plaintiff experienced improvement when compliant with treatment. *See, e.g.,* Tr. 404 (March 4, 2015: Plaintiff reported Percocet, gabapentin, and Flexeril helped keep his pain manageable); Tr. 401 (April 29, 2015: Plaintiff reported pain medication helped reduce his overall level of pain and increase his functioning during daily activities). While Dr. Muddasani's opinions were rendered in 2016 and 2017, the ALJ noted that Plaintiff stopped opioid therapy in 2015. Tr. 31; *see* Tr. 906. The ALJ reasonably concluded Dr. Muddasani's opinions were entitled to less weight because they reflected Plaintiff's functioning without the benefit of treatment. This finding is supported by substantial evidence.

//

//

# CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment (**ECF No. 11**) is **DENIED**.

2.  Defendant's Motion for Summary Judgment (**ECF No. 12**) is **GRANTED**.

The District Court Executive is directed to enter this Order, enter judgment accordingly, furnish copies to counsel, and **close the file**.

**DATED** December 11, 2019.



THOMAS O. RICE
Chief United States District Judge